J-S60014-17

2020 PA Super 27

| IN RE: M.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: PENNSYLVANIA STATE POLICE | |
| | No. 366 WDA 2017 |

Appeal from the Order January 30, 2017
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2016-20-MD

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.*

OPINION BY OLSON, J.: **FILED FEBRUARY 7, 2020**

The Pennsylvania State Police (hereinafter "PSP") appeal from the trial court's January 30, 2017 order, which granted M.B. relief from his firearms disability and expunged the record of M.B.'s involuntary commitment under 50 P.S. § 7302. We vacate and remand for further proceedings consistent with this opinion.[1,2]

---

[1] On March 20, 2018, we issued an unpublished memorandum and order in this matter, where we vacated, in part, the trial court's January 30, 2017 order. *In re M.B.*, 188 A.3d 540 (Pa. Super. 2018) (unpublished memorandum) at 1-32. Of note, we held that, pursuant to this Court's *en banc* opinion in *In re J.M.Y.*, the trial court had jurisdiction to review the validity of M.B.'s Section 303 certification and commitment – even though M.B.'s Section 303 commitment was made final over ten years before M.B. filed his current petition to expunge. *Id.* at 26-29; *see In re J.M.Y.*, 179 A.3d 1140 (Pa. Super. 2018) (*en banc*), *reversed by* 218 A.3d 404 (Pa. 2019). However, on October 15, 2019, the Pennsylvania Supreme Court reversed our *en banc* opinion in *J.M.Y.* and held that, if an individual wishes to obtain judicial review of his involuntary commitment pursuant to Section 303, the individual is required to "petition the court of common pleas for review of the certification" within 30 days of the date the certification was filed. 50 P.S. § 7303(g); 42 Pa.C.S.A. § 5571(b); *In re J.M.Y.*, 218 A.3d 404, 418 (Pa. 2019). Thus, on December 3, 2019, the Pennsylvania
*(Footnote Continued Next Page)*

---

*Former Justice specially assigned to the Superior Court.

On June 6, 2016, M.B. filed a "Petition to Vacate and Expunge Involuntary Civil Commitment" in the Court of Common Pleas of Clearfield County (hereinafter "M.B.'s Petition" or "the Petition"). Within the Petition, M.B. averred that, in the fall of 2003, he became depressed due to "the loss of contact with his former girlfriend, the mother of his newborn son, and his best friend's departure for military service." M.B.'s Petition, 6/6/16, at 2. Because of his depression, on the night of September 23, 2003, M.B. consumed alcohol and pills and, while he was heavily intoxicated, he cut his arms with a knife. *Id.*; N.T. Hearing, 10/11/16, at 19-20.

*(Footnote Continued)* ───────────────

Supreme Court granted PSP's petition for allowance of appeal in *M.B.* and vacated our March 20, 2018 order "as it relates to the validity of M.B.'s [Section] 303 certification and commitment." *In re M.B.*, ___ A.3d ___, 2019 WL 6485125 (Pa. 2019). The Supreme Court then remanded the case to us for reconsideration in light of *J.M.Y. Id.*

[2] PSP failed to attach its Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal to its brief. This omission violates Pennsylvania Rule of Appellate Procedure 2111(a)(11) and (d) and, as a result of this failing, M.B. requests that we dismiss PSP's appeal. M.B.'s Brief at 1-2. We also note that, after M.B. filed his brief, PSP filed a "Motion to Append Concise Statement of Errors Complained of on Appeal" (hereinafter "PSP's Motion to Append Rule 1925(b) Statement"). We conclude that, in light of PSP's Motion to Append Rule 1925(b) Statement, PSP's failure to attach the Rule 1925(b) Statement to its brief does not prevent us from reviewing the merits of the issues raised on appeal. *See*, *e.g.*, *Hayward v. Hayward*, 868 A.2d 554, 557 n.2 (Pa. Super. 2005) (holding that, "because [the appellant's] violations of our rules of appellate procedure . . . do not prevent us from reviewing the merits of the issues raised, we will address [the merits of appellant's] claims"). We thus decline to dismiss this appeal. Further, we grant PSP's Motion to Append Rule 1925(b) Statement.

M.B. awoke that night "to people over top of [him] and . . . in an ambulance." N.T. Hearing, 10/11/16, at 20. The ambulance took him to Millcreek Community Hospital, where he was admitted at 12:47 a.m. on September 24, 2003. M.B.'s Petition, 6/6/16, at 2; N.T. Hearing, 10/11/16, at 20-21. Doctors at the hospital examined M.B. that morning and moved him to the fourth floor of the hospital, which was the hospital's mental health facility. N.T. Hearing, 10/11/16, at 21-22.

M.B.'s involuntary commitment was initiated by his mother, who completed an Application for Involuntary Emergency Examination and Treatment pursuant to Section 302 of the Mental Health Procedures Act (hereinafter "Section 302 Certification"). M.B.'s Petition, 6/6/16, at 2; N.T. Hearing, 10/11/16, at 22; **see also** 50 P.S. § 7302 (hereinafter "Section 302").[3] In the application portion of the Section 302 Certification, M.B.'s mother wrote:

> [M.B.] admitted to taking pills & alcohol. He left a suicide note for me with blood all over it. He doesn't feel loved and has been depressed for approx. 1 yr. He has cut up his arms with a knife & they are bleeding. Suicide note said good bye to his best friend & family. He has been drinking on top of pills & is extremely agitated. Broke up with

---

[3] Section 302 permits the involuntary emergency treatment of an individual, where a physician determines "that the person is severely mentally disabled and in need of emergency treatment." 50 P.S. § 7302(b). Under Section 302, the patient must be discharged "within 120 hours, unless within such period . . . a certification for extended involuntary emergency treatment is filed pursuant to" 50 P.S. § 7303. 50 P.S. § 7302(d).

girlfriend & she had a baby approx. 6-9 months ago. Girlfriend doesn't want anything to do with him.

Section 302 Certification, 9/24/03, at 3.

The Section 302 Certification declares that the county administrator issued a warrant authorizing M.B.'s emergency examination. As a result, at 12:50 a.m. on September 24, 2003, a physician examined M.B. and attested that M.B. "is severely mentally disabled and in need of treatment." Section 302 Certification, 9/24/03, at 5 and 7. Specifically, the "Physician's Examination" portion of the Section 302 Certification declares that the physician made the following observations and findings:

> Pt brought by EMS/PSP after becoming violent, cutting him-self & taking 3 Effexor. Pt states he is depressed and states he wants to kill himself. Pt also threatened to kill EMS and PSP Troopers.
>
> . . .
>
> In my opinion:
>
> [] The patient is severely mentally disabled and in need of treatment. He should be admitted to a facility designated by the County Administrator for a period of treatment not to exceed 120 hours.
>
> . . .
>
> /s_____
> SIGNATURE OF EXAMINING PHYSICIAN

Section 302 Certification, 9/24/03, at 7.

The Section 302 Certification was then filed in the Erie County Court of Common Pleas. *See id.* at 1.

- 4 -

Within M.B.'s Petition, M.B. claimed that he "was held for observation for three [] days following his involuntary commitment" and then discharged from the hospital. M.B.'s Petition, 6/6/16, at 2-3. Afterwards, M.B. participated in and completed outpatient therapy. *Id.* at 3. M.B. averred that he "was prescribed [] medication at the hospital, which he took as prescribed until he completed the prescription" and that he "has not been prescribed medication [or] required treatment" since that time. *Id.*

Notwithstanding the Section 302 Certification, M.B.'s Petition declared that the hospital failed to comply with certain procedural mandates that are necessary to involuntarily commit an individual under Section 302. Specifically, M.B. claimed that the hospital failed to advise him of his right to counsel and failed to provide him with: a Form MH-783-B Explanation of Warrant; a Form MH-782 Bill of Rights; and, a Form MH-783-A Explanation of Rights Under Involuntary Emergency Commitment. M.B.'s Petition, 6/6/16, at 2; N.T. Hearing, 10/11/16, at 23-29. As M.B. claimed, 55 Pa.Code § 5100.86 required the hospital to provide him with all of the above before it could involuntarily commit him under Section 302. M.B.'s Petition, 6/6/16, at 2.

M.B.'s Petition contained four counts. Count One claimed that the hospital failed to provide him with the procedural safeguards required by 55 Pa.Code § 5100.86. M.B. thus requested that the trial court "vacat[e] and expung[e his] September 24, 2003 involuntary mental health commitment,

pursuant to 18 [Pa.C.S.A.] § 6111.1(g)(2) and Article 1, Section 1 of the Pennsylvania Constitution." *Id.* at 4-5.

In Count Two, M.B. alleged that he "was never provided a hearing in relation to the [Section] 302" commitment and, yet, the Section 302 commitment "putatively stripped [M.B. of his] fundamental right" to possess a firearm. *Id.* at 7. M.B. claimed that, "by failing to provide any opportunity for [him] to be heard . . . , the deprivation of [M.B.'s] fundamental right to possess firearms for self-defense was arbitrary and violated his right to due process." *Id.* (emphasis omitted). As such, M.B. claimed that the trial court must expunge his September 24, 2003 involuntary commitment, pursuant to the 14th Amendment to the United States Constitution. *Id.* at 7-8.

In his third count, M.B. claimed that his single involuntary commitment was insufficient to strip him of his right to bear arms under the Second Amendment to the United States Constitution and Article 1, Section 21 of the Pennsylvania Constitution. *Id.* at 8-9. On this basis, M.B. requested that the trial court expunge the record of his involuntary commitment.

Finally, in Count Four, M.B. requested that the trial court grant him state relief from his firearm disability, pursuant to 18 Pa.C.S.A. § 6105(f). *Id.* at 10-11.

PSP answered M.B.'s petition and denied that M.B. was entitled to relief on any of his claims. *See* PSP's Answer, 7/15/16, at 1-8.

On October 11, 2016, the trial court held a hearing on the matter. At the beginning of the hearing, PSP introduced into evidence an "Application for Extended Involuntary Treatment Pursuant to Section 303 of the Mental Health Procedures Act" (hereinafter "Section 303 Certification"). N.T. Hearing, 10/11/16, at 6-7; *see also* 50 P.S. § 7303 (hereinafter "Section 303").[4] According to PSP's proffer, the Section 303 Certification: named

---

[4] Section 303 is entitled "Extended involuntary emergency treatment certified by a judge or mental health review officer--not to exceed twenty days." This section authorizes "extended involuntary emergency treatment" for any person who is being treated under Section 302, whenever the facility determines – and the judge or mental health review officer agrees – that "the need for emergency treatment is likely to extend beyond 120 hours." *See* 50 P.S. § 7303(a) and (c). In such event, Section 303 permits extended involuntary emergency treatment for a term not to exceed "20 days after the filing of the certification." 50 P.S. § 7303(h).

As this Court has recognized, "commitment under § 7303 indicates a more serious mental problem [than commitment under § 7302] . . . [and] imposes major due process requirements." *In re Jacobs*, 15 A.3d 509, 511 (Pa. Super. 2011). The due process requirements imposed by Section 303 include: the court of common pleas must appoint an attorney to represent the patient during the Section 303 proceedings, unless the patient "can afford, and desires to have, private representation;" an "informal hearing" must be conducted by a judge or a mental health review officer within 24 hours after the application for extended involuntary emergency treatment is filed; during the informal hearing, "[t]he person or his representative shall have the right to ask questions of the physician and of any other witnesses and to present any relevant information;" to commit an individual under Section 303, the judge or mental health review officer must certify "that the person is severely mentally disabled and in need of continued involuntary treatment;" and, if the informal hearing was conducted by a mental health review officer, the patient must be given "the right to petition the court of common pleas for review of the certification" – and a "hearing shall be held within 72 hours after the petition is filed." *See* 50 P.S. § 7303(a)-(h).

M.B. as the patient; was filed on September 25, 2003, in the Erie County Court of Common Pleas; and, declared that the mental health review officer "finds that the patient [is] severely mentally disabled and is in need of" inpatient treatment, at Millcreek, "pursuant to the provisions of section 303 of the Mental Health Procedures Act of 1976 for a period of 20 days." Section 303 Certification, 9/25/03, at 4.

M.B. challenged the Section 303 Certification at the October 11, 2016 hearing. Initially, M.B. noted that, while his name was spelled correctly on two of the four pages, his last name was spelled incorrectly on the other two pages.[5] N.T. Hearing, 10/11/16, at 8. As a result, M.B. argued, he was "not sure that [the Section 303 Certification was] in relation to" him. M.B. thus objected to the Section 303 Certification on relevancy grounds. *See id.* Further, M.B. declared that the Section 303 Certification was issued within 24 hours of the original commitment. *Id.* at 8-9. M.B. argued that, "[s]ince the [Section] 302 [commitment] is good for 120 hours, that seems a little bit suspect, as well as the fact that he was released within 120 hours." *Id.*

_____

[5] The record in this matter is sealed. Therefore, we may not disclose M.B.'s last name or the slightly different name that was used on two of the four pages of the Section 303 Certification. However, we note that M.B.'s last name contains six letters and that the divergent name alters the second and third letters of his last name. In particular, the letters "O-W" are substituted for "A-U." *See* N.T. Hearing, 10/11/16, at 10-11 (the trial court examined the Section 303 Certification and declared, on the record, that M.B.'s name appears on two of the four pages and that a divergent name, with the letters "O-W" substituted for "A-U," appears on the other two pages).

at 9. Therefore, M.B. also objected to the Section 303 Certification because there was a question as to "whether it was executed lawfully." *Id.* Notwithstanding M.B.'s objections, the trial court admitted PSP's Section 303 Certification into evidence. *Id.* at 11.

During the hearing, M.B. testified regarding: his depression in the fall of 2003; his intoxication and self-injury on the night of September 23, 2003; and, his involuntary commitment at Millcreek Community Hospital, which began at 12:47 a.m. on September 24, 2003. *See id.* at 17-22. M.B. also testified that, to his recollection, during his commitment: he was never informed of his right to an attorney; he was never provided an attorney; no hearing ever occurred; and, he never saw the Form MH-783-B Explanation of Warrant, the Form MH-782 Bill of Rights, or the Form MH-783-A Explanation of Rights Under Involuntary Emergency Commitment. *Id.* at 22-27. Further, according to M.B., the first time he discovered "that a 302 petition had been executed in relation to [him]" was in 2012 or 2013, when PSP denied his application to purchase a firearm. *Id.* at 22.

M.B. testified that he was released from Millcreek Community Hospital on September 29, 2003, or five days after his initial commitment. *Id.* at 29. Since that time, M.B. testified, he has cultivated a successful career and lives with his long-time girlfriend and her son. *Id.* at 30-32. M.B. testified that, since his release, he: drinks alcohol socially and does not use illegal

drugs; has not had an irrational desire to harm himself or others; and, has never been committed to a facility for mental health reasons.[6] *Id.* at 32-33.

Finally, M.B. testified that, on March 25, 2016, he was examined by psychologist Dr. Michael M. Keil. Dr. Keil later issued a report, where he opined that M.B. may safely own and possess a firearm without threat to himself or others. *Id.* at 33-36; *see also* Dr. Keil's Psychological Evaluation Report, 3/25/16, at 1-5 (admitted into evidence as M.B.'s Exhibit "B").

With the exception of the Section 303 Certification, PSP did not introduce any witnesses, documents, or other evidence. The hearing then concluded.

On January 4, 2017, the trial court entered its initial order in the matter. The order granted M.B. relief from his firearm disability pursuant to 18 Pa.C.S.A. § 6105(f), but did not expunge the record of M.B.'s involuntary commitment. The order declares:

> AND NOW, this 4th day of January, 2017, upon consideration of Petitioner M.B.'s Petition to Vacate and Expunge the Involuntary Commitment, a hearing on the same, and the well-reasoned briefs of the parties on their respective positions, it is the ORDER of this Court that the subject Petition be and is hereby GRANTED pursuant only to Petitioner's Count [Four], which seeks state relief under 18

_____

[6] M.B. testified that, after his release from the hospital, he was arrested one time (for driving under the influence ("DUI")). M.B. testified that this DUI charge was resolved *via* accelerated rehabilitative disposition and that the charge was later dismissed and the record of his arrest expunged. N.T. Hearing, 10/11/16, at 33.

> [Pa.C.S.A.] § 6105(f)(1). Accordingly, M.B.'s right to possess firearms shall be and is hereby restored; however, M.B.'s involuntary commitment pursuant to either 50 P.S. § 7302 or § 7303 is not expunged.

Trial Court Opinion and Order, 1/4/17, at 4.

On January 13, 2017, M.B. filed a motion for reconsideration and claimed that the trial court erred when it refused to expunge the record of his involuntary commitment. M.B.'s Motion for Reconsideration, 1/13/17, at 1-4. That same day, the trial court entered an order expressly granting reconsideration of its January 4, 2017 order. Trial Court Order, 1/13/17, at 1.

On January 30, 2017, the trial court entered a final Opinion and Order in the matter. The January 30, 2017 order reads:

> AND NOW, this 30th day of January, 2017, upon reconsideration of M.B.'s Petition to Vacate and Expunge the Involuntary Commitment, a hearing on the same, and the well-reasoned briefs of the parties on their respective positions, it is the ORDER of this Court that the subject Petition be and is hereby GRANTED pursuant to Petitioner's Count [One], which seeks relief under 18 [Pa.C.S.A.] § 6111.1(g)(2). Accordingly, M.B.'s involuntary commitment pursuant to 50 P.S. § 7302 shall be expunged.
>
> The Court hereby reaffirms the provisions of the Opinion and Order dated January 4, 2017, with the exception of those portions relating to 18 [Pa.C.S.A.] § 6111.1.

Trial Court Opinion and Order, 1/30/17, at 6.

As is evident from the above, the trial court did not order the record of the Section 303 Certification expunged. However, within the trial court's accompanying opinion, the trial court specifically declared that it "[did] not

- 11 -

believe M.B. was committed pursuant to" Section 303 and, also, that the Section 303 Certification was "entirely invalid." Trial Court Opinion, 1/30/17, at 4-5. The trial court reasoned:

> While the [trial c]ourt agrees that lower courts generally may not review a [Section 303] commitment under 18 Pa.C.S.A. § 6111.1, the [trial c]ourt believes that the alleged Section 303 commitment in this case was entirely invalid, and that M.B.'s commitment was done pursuant only to Section 302. . . .
>
> A number of disparities were revealed during the hearing in this matter regarding M.B.'s alleged Section 303 commitment. Although [PSP] submitted a putative 303 Petition, said Petition has several different names specified therein. Moreover, [PSP] produced the putative 303 Petition less than [24] hours before the October [11], 2016 hearing after having acknowledged that [PSP] was told that no Section 303 Petition existed. Procedurally, M.B. testified that he never attended a hearing in regards to a Section 303 commitment, nor did M.B. have an attorney appointed on his behalf. There was no record of the Section 303 proceedings provided to M.B. or to this court. The Section 303 Petition submitted to the court also fails to include any of the necessary Section 302 forms, as required by 50 P.S. § 7303(d)(3). Of further interest, M.B. was released within [120] hours from his commitment, which is the timeframe for an involuntary commitment pursuant to Section 302. . . . Finally, no evidence was presented in support of the fact that M.B.'s examining doctors were either psychiatrists or clinical psychologists, as required by 18 [Pa.C.S.A.] § 6111.1(k).
>
> Because the record is so devoid of facts necessary to support a valid 50 P.S. § 7303 commitment, which . . . demands more procedural safeguards than a Section 302 commitment, the court does not believe M.B. was committed pursuant to 50 P.S. § 7303. Instead, the court believes M.B.'s involuntary commitment was pursuant to 50 P.S. § 7302 only.

Trial Court Opinion and Order, 1/30/17, at 4-5 (some capitalization omitted).

PSP filed a timely notice of appeal. It now raises two claims to this Court:

> [1.] Did the Court of Common Pleas of Clearfield County exceed its jurisdiction, commit an error of law and abuse its discretion in disregarding the record of M.B.'s commitment pursuant to 50 P.S. § 7303?
>
> [2.] Did the trial court commit an error of law by applying the incorrect standard of review?

PSP's Brief at 4.[7]

_____

[7] The trial court ordered PSP to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). PSP complied with the trial court's order and, within its Rule 1925(b) statement, PSP listed the two issues currently raised on appeal. PSP's Rule 1925(b) Statement, 3/29/17, at 1. Specifically, PSP's Rule 1925(b) statement declares:

> [1.] The [trial] court committed an error of law, and/or abused its discretion, in determining that, despite competent evidence to the contrary, [M.B.] had not been subject to an involuntary commitment pursuant to 50 P.S. § 7303, when the court was without jurisdiction to do so pursuant to statute and case law, and subsequently ordered expungement of [M.B.'s] involuntary commitment pursuant to 50 P.S. § 7302. **See**: 50 P.S. § 7115 (venue and location of legal proceedings); **see also**: 18 [Pa.C.S.A.] § 6111.1(e) (challenge to records); [**In re Jacobs**,] 15 A.3d 509 (Pa. Super. 2011).
>
> [2.] The [trial] court committed an error of law, or abused its discretion in requiring [PSP] to prove by a clear and convincing standard of review contrary to the Pennsylvania Supreme Court's holding in [**In re Vencil**,] 152 A.3d 235 (Pa. 2017), that [M.B.'s] involuntary commitment pursuant to 50 P.S. § 7302 was sufficient as a matter of law.

*(Footnote Continued Next Page)*

First, PSP claims that the trial court "exceed[ed] its jurisdiction, commit[ed] an error of law and abuse[d] its discretion in disregarding the record of M.B.'s commitment pursuant to" Section 303. *Id.* This claim is composed of three subparts: first, PSP argues that the Court of Common Pleas of Clearfield County did not have jurisdiction to interpret the Section 303 Certification and hold that the Section 303 Certification did not pertain to M.B.; second, PSP argues that, even if the trial court had the authority to interpret the Section 303 Certification to determine whether the Section 303 Certification applied to M.B., the trial court's conclusion that it did not pertain to M.B. constituted an abuse of discretion; and, third, PSP claims that, "since the Section 303 [Certification] in this case was pertaining to M.B., the [trial c]ourt did not have jurisdiction to rule that 'the alleged Section 303 [Certification in] this case was entirely invalid' for any reason." *See* PSP's Brief at 8-12. We will consider the three sub-issues in the order listed above.

*(Footnote Continued)* ─────────────

PSP's Rule 1925(b) Statement, 3/29/17, at 1 (some capitalization omitted).

Further, the trial court issued a Rule 1925(a) opinion to this Court, where it responded to PSP's claims. We note that, within the trial court's Rule 1925(a) opinion, the trial court declared that its factual findings were not an abuse of discretion. Trial Court Opinion, 4/4/17, at 1.

PSP initially claims that the trial court did not have the power to interpret the Section 303 Certification to determine whether the Section 303 Certification applied to M.B. PSP argues:

> The Court of Common Pleas of Clearfield County was without jurisdiction to determine that the record presented by [PSP] evidencing M.B. had been subject to an extended involuntary commitment under 50 P.S. § 7303[] did not pertain to M.B. The record was provided to [PSP] by the Prothonotary of the Court of Common Pleas of Erie County, as pertaining to [M.B.] In holding that "the court does not believe M.B. was committed pursuant to 50 P.S. § 7303," [the trial court] exceeded its jurisdiction because its ruling impermissibly intrudes on a matter solely within the jurisdiction of the Erie County Court of Common Pleas as to its own records and proceedings, and disregarded competent evidence it had no authority to review.

PSP's Brief at 8.

PSP has cited no legal precedent or law to support this argument, other than citing to the broad legal proposition that "every court of record has a 'supervisory and protecting charge over its records, and has inherent power to amend its records.'" PSP's Brief at 8, *citing* **Commonwealth v. Smith**, 229 A.2d 18, 20 (Pa. Super. 1967).

Simply stated, the trial court in this case had the power to interpret the Section 303 Certification and conclude that the Section 303 Certification did not pertain to M.B. Trial Court Opinion, 1/30/17, at 5. To be sure, PSP introduced the Section 303 Certification into evidence at the hearing and the trial court was the factfinder in this case. In presiding over the hearing, the trial court naturally enjoyed the inherent power to resolve evidentiary

- 15 -

questions and issues of fact – including what evidence was relevant to the parties and proceedings and what evidence it believed or disbelieved. ***See***, ***e.g.***, ***Fetzer v. Vishneski***, 582 A.2d 23, 25 (Pa. Super. 1990) ("[w]hen sitting without a jury, the trial court acts as the finder of fact, and the trial court's findings have the same force and effect as a jury verdict"). Thus, the trial court had the power to determine that the Section 303 Certification did not pertain to M.B., but, rather, that the certification concerned some other individual. PSP's argument to the contrary fails.

Next, PSP claims, the trial court's factual conclusion that the Section 303 Certification did not pertain to M.B. was against the weight of the evidence.[8] PSP's Brief at 9-12; ***see also*** Trial Court Opinion and Order,

_____

[8] Within the trial court's opinion, the trial court declared that it "[did] not believe M.B. was committed pursuant to" Section 303 and that the Section 303 Certification was "entirely invalid." Trial Court Opinion, 1/30/17, at 4-5. Obviously, "[h]uman language is not a perfect vehicle for conveying thought, and it frequently happens that words used have a broader or narrower meaning than that intended by the person using them." ***Kennington v. Hemingway***, 57 So. 809, 811 (Miss. 1912). Here, we find some uncertainty in the trial court's declaration that it "[did] not believe M.B. was committed pursuant to" Section 303. Two possible interpretations emerge from the trial court's use of these words: 1) the Section 303 Certification was a valid certification against some person, but the certification did not concern M.B. and, instead, pertained to some other individual, or 2) the Section 303 Certification concerned M.B., but the facility and the courts failed to follow the proper procedure to commit M.B. "pursuant to" Section 303 – and that the Section 303 Certification was thus "entirely invalid." In other words, when the trial court declared that it "[did] not believe M.B. was committed pursuant to" Section 303 and that the Section 303 Certification was "entirely invalid," was the trial court giving one reason or two?

*(Footnote Continued Next Page)*

We (like M.B. and PSP) believe that – when the trial court declared that it "[did] not believe M.B. was committed pursuant to" Section 303 – the trial court meant that the certification did not concern M.B. and, instead, pertained to some other individual. ***See*** M.B.'s Brief at 7 ("the trial court found that the putative 303 Petition . . . was not in relation to [M.B.]"); PSP's Brief at 8 (arguing that the trial court erred when it concluded that the Section 303 Certification "did not pertain to M.B.").

Our conclusion finds support in the fact that the trial court's opinion emphasizes that the Section 303 Certification "has several different names specified therein." Trial Court Opinion and Order, 1/30/17, at 4-5. However, and more importantly, we again note that the trial court only ordered that the record of M.B.'s Section 302 commitment be expunged. Trial Court Order, 1/30/17, at 1. To be sure, the trial court's final order in the matter expressly holds that the record of the Section 303 commitment is **not** expunged. This is because the trial court's initial order of January 4, 2017 declared that "M.B.'s involuntary commitment pursuant to either 50 P.S. § 7302 or § 7303 **is not expunged**;" the trial court's final order of January 30, 2017 then expunged **only** the Section 302 commitment – and the final order further declared that, with the exception of the Section 302 expunction, the trial court "**reaffirms** the provisions of the Opinion and Order dated January 4, 2017." Trial Court Order, 1/4/17, at 1 (emphasis added); Trial Court Order, 1/30/17, at 1 (emphasis added). Therefore, since the trial court's final order of January 30, 2017 "reaffirm[ed]" the portion of its earlier, January 4, 2017 order that refused to expunge the record of the Section 303 commitment, the record of the Section 303 commitment is not expunged.

As will be explained later in this opinion, the trial court could not have expunged the record of the Section 302 commitment if it believed M.B. had been committed pursuant to Section 303. ***See In re Jacobs***, 15 A.3d at 511 (the appellant was involuntarily committed under Sections 302 and 303 and requested that the trial court expunge the record of his involuntary commitments; this Court held that the trial court did not have jurisdiction to review the Section 303 commitment and that, with respect to his Section 302 commitment, the appellant's claim was "moot because even if he is entitled to expunction [of his Section 302 commitment], expunction cannot go forward because appellant was also involuntarily committed under § 7303"). Hence, the trial court must have concluded that the Section 303 Certification did not pertain to M.B. – as this was the only way the trial court

*(Footnote Continued Next Page)*

1/30/17, at 4-5. Although, (as we stated above) the trial court enjoys the authority, within the context of a proceeding under 18 Pa.C.S.A. § 6111.1(g)(2), to determine whether a Section 303 commitment pertains to the petitioner, we agree with PSP in this case that the trial court abused its discretion when it concluded that its factual finding – that the Section 303 Certification did not pertain to M.B. – was not against the weight of the evidence.

Our examination of PSP's claim is guided by the settled principles that govern a weight of the evidence claim. As our Supreme Court has explained:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

_(Footnote Continued)_  _____

could have expunged the record of M.B.'s Section 302 commitment without expunging the Section 303 Certification.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:

> The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations,

quotations, and emphasis omitted).[9]

---

[9] On appeal, M.B. does not claim that PSP waived its weight of the evidence claim. Nevertheless, we note that the Pennsylvania Rules of Civil Procedure that govern petition practice regulate the procedure in this case. ***See*** 18 Pa.C.S.A. § 6111.1(g)(2) ("[a] person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act **may petition** the court to review the sufficiency of the evidence upon which the commitment was based") (emphasis added); Pa.R.C.P. 206.1-206.7; ***see also*** Clearfield County Local Rule 206.1(a)(2) ("'petition' means . . . any proper matter for which no other specific procedure is authorized or in which only a Petition is prescribed as the authorized procedure for bringing such matter before the Court for disposition"); ***In re K.L.S.***, 934 A.2d 1244 (Pa. 2007) ("[p]roceedings pursuant to the [Mental Health Procedures Act] are governed by the rules of petition practice . . . and post-trial motions are not required to preserve issues for appeal"). Therefore, PSP was not permitted to file a post-trial motion in this case. ***See*** Pa.R.C.P. 227.1 note ("[a] motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice").

Since post-trial motions were prohibited, the first time PSP could have claimed that the trial court's factual findings were against the weight of the evidence was in its Rule 1925(b) statement of errors complained of on appeal. ***See Criswell v. King***, 834 A.2d 505, 511 (Pa. 2003) (a weight of the evidence claim "is a claim which, by definition, ripens only after the verdict"). Further, PSP, in fact, raised the weight claim in its Rule 1925(b) statement and the trial court responded to PSP's weight claim in its opinions. PSP's Rule 1925(b) Statement, 3/29/17, at 1; Trial Court Opinion, 4/4/17, at 1; Trial Court Opinion and Order, 1/30/17, at 4-5. Therefore, we conclude that, since PSP raised the weight claim in its Rule 1925(b) statement and since the trial court explained its reasoning in its various opinions, PSP preserved its weight of the evidence claim on appeal. ***See In re Estate of Smaling***, 80 A.3d 485, 490-493 (Pa. Super. 2013) (*en banc*) (holding that, given the optional nature of exceptions in Orphans' Court proceedings, the appellant did not waive her weight of the evidence claim when she failed to file exceptions in the case – and, in fact, first raised the weight of the evidence claim in her Rule 1925(b) statement; we explained: "by their nature, [weight of the evidence claims] can only arise after the court issues its final decision in a matter. . . . [B]y raising her weight claim in a
*(Footnote Continued Next Page)*

The Section 303 Certification consists of a form that includes handwritten responses to typed, form questions and headings. We have underlined the portions of the form that are handwritten. Moreover, we note that the form includes at least two different handwriting sources: the introduction, Part I, Part II, and the patient's name on Part III are written in (what the trial court found and what appears to be) one individual's handwriting; the remainder of Part III, as well as Part IV, are written in (what the trial court found and what appears to be) a different handwriting source or sources. **See** N.T. Hearing, 10/11/16, at 10-11 (trial court examined the Section 303 Certification and recognized, on the record, the two different spellings of the patient's name in the document, as well as the different handwriting on the form). The Section 303 Certification reads as follows:

**APPLICATION FOR EXTENDED INVOLUNTARY
TREATMENT**

*(Footnote Continued)* ─────────────

timely-filed Rule 1925(b) statement, [the appellant] successfully preserved the issue for appellate review"); **see also Commonwealth v. Widmer**, 689 A.2d 211, 212-213 (Pa. 1997) (holding: at a time when post-sentence motions were optional and a "void" existed in the rules as to how a litigant was to preserve a weight of the evidence challenge following a criminal trial, the Supreme Court held that the appellant did not waive his weight of the evidence claim when he raised the claim in his Rule 1925(b) statement and where the trial court discussed the weight claim in its Rule 1925(a) opinion; the Supreme Court then "remanded to the trial court to permit [the] appellant to file a motion for a new trial *nunc pro tunc* challenging the weight of the evidence"); **In re J.B.**, 106 A.3d 76 (Pa. 2014) (applying **Widmer's** holding to a juvenile court's adjudication of delinquency).

**MENTAL HEALTH PROCEDURES ACT OF 1976**
**(SECTION 303)**

NAME OF PATIENT    AGE       SEX
[M.B.]                20         M

NAME OF COUNTY PROGRAM       NAME OF BSU
ERIE MH/ONR                   ERIE MLT/BSU

NAME OF FACILITY      ADMISSION DATE
Millcreek Behav Hlth     9/24/03

. . .

**PART I**
**REQUEST FOR CERTIFICATION**

[M.B.] has acted in such manner as to cause a responsible party to believe that he/she is severely mentally disabled as specified in the attached 302 form. He/she was admitted to Millcreek Behav Hlth for involuntary emergency examination and treatment on 9/24/03 at 1250 AM under Section 302. He/she was examined by Dr. Ulus and was found to be in need of continued treatment. I respectfully request, therefore, that he/she be certified by the court for extended involuntary emergency treatment under Section 303.

/s                            9/24/03
(SIGNATURE OF PETITIONER)      (DATE)

CEO
(TITLE OF PETITIONER)

---

**PART II**
**THE PATIENT'S RIGHTS**

I affirm that I have informed the patient of the actions I am taking and have explained to the patient these procedures and his/her rights as described in Form MH 784-A. I believe that he/she [X] understands . . . these rights.

- 22 -

/s_____     9/24/03
(SIGNATURE OF PERSON GIVING RIGHTS)        (DATE)

_____

## PART III
## PHYSICIAN'S EXAMINATION

I hereby affirm that I have examined [M.B.] on 9/24/03 to determine if he[] continued to be severely mentally ill and in need of treatment.

RESULTS OF EXAMINATION
FINDINGS: (Describe your findings in detail. . . .)

The pt. has been admitted due to his admitting to suicidal plans, cutting himself for a while, depression and alcohol abuse, does not want to stay, he would be a danger for himself if released before mental stabilization.  Expected to be returned on the unit. . . .

In my opinion: (Check A. or B.)

A. [X] The patient continues to be severely mentally disabled and in need of treatment.

. . .

/s_____     9/24/03
(SIGNATURE OF EXAMINING OR TREATING PHYSICIAN)   (DATE)

_____

## PART IV
## CERTIFICATION BY THE COURT FOR EXTENDED INVOLUNTARY EMERGENCY TREATMENT – SECTION 303

In the court of Common Pleas of Erie County. . . .

In re: [M.B. (sic)] . . .

- 23 -

## Certification for Extended Treatment

This <u>25</u> day of <u>Sept</u>, ~~19~~ <u>2003</u> after hearing and consideration of (Details of findings. Include details as to what type and why treatment is needed. . . .)

<u>Ad: 9/24/03; suicidal; written note w/his blood - cutting himself; DX – mood disorder n.o.s.; depressed & angry mood; reclusive; morbid depression; reasonable risk of suicide if discharged.</u>

The court finds that the patient [<u>X</u>] is . . . severely mentally disabled and in need of treatment. Accordingly, the court orders that: . . .

[<u>M.B. (sic)</u>] receive: . . . [X] inpatient treatment

which is the least restrictive treatment setting appropriate for the patient at <u>Millcreek</u> as a severely mentally disabled person pursuant to the provisions of section 303 of the Mental Health Procedures Act of 1976 for a period of <u>20 days</u>.

. . .

I have explained to the patient that if his/her conference was before a Mental Health Review Officer he/she may petition the court for a review of any decisions reached at this conference.

. . .

[] The patient was represented by _____<u>Joe Burt</u>_____
(NAME OF ATTORNEY)

_____<u>Public Defender</u>_____
(ADDRESS OF ATTORNEY)

. . .

for the court <u>/s   [(illegible)]</u>_____

_____<u>MHRO</u>_____
(TITLE)

Section 303 Certification, 9/25/03, at 1-4.

The last page of the Section 303 Certification contains a time stamp, which reads:

COMMON PLEAS COURT
ERIE, PA

2003 SEP 25      P 3:52

CLERK OF RECORDS
PROTHONOTARY

*Id.* at 4.

As noted above, the trial court did not order the record of the Section 303 Certification expunged. However, within the trial court's accompanying opinion, the trial court declared that it "[did] not believe M.B. was committed pursuant to" Section 303 and that the Section 303 Certification was "entirely invalid." Trial Court Opinion and Order, 1/30/17, at 4-5. Further, within the trial court's opinion, it explained that it arrived at its factual conclusions because: the Section 303 Certification "has several different names specified therein;" PSP "produced the putative 303 Petition less than [24] hours before the October [11], 2016 hearing after having acknowledged that PSP was told that no Section 303 Petition existed;" and, "M.B. was released within [120] hours from his commitment, which is the timeframe for an involuntary commitment pursuant to Section 302." Trial Court Opinion and Order, 1/30/17, at 4-5. The trial court also noted several alleged procedural irregularities with the Section 303 Certification. The trial court found:

- 25 -

> M.B. testified that he never attended a hearing in regards to a Section 303 commitment, nor did M.B. have an attorney appointed on his behalf[; t]here was no record of the Section 303 proceedings provided to M.B. or to [the trial court; t]he Section 303 Petition submitted to the [trial c]ourt [] fails to include any of the necessary Section 302 forms, as required by 50 P.S. § 7303(d)(3) . . . [; and,] no evidence was presented in support of the fact that M.B.'s examining doctors were either psychiatrists or clinical psychologists, as required by 18 [Pa.C.S.A.] § 6111.1(k).

Trial Court Opinion and Order, 1/30/17, at 4-5.

We conclude the trial court abused its discretion by concluding that its factual finding – that the Section 303 Certification did not pertain to M.B. – was not against the weight of the evidence.

In this case, the trial court concluded that the Section 303 Certification did not pertain to M.B. because: the Section 303 Certification "has several different names specified therein;" there were several alleged procedural irregularities with the Section 303 Certification; and, "M.B. was released within [120] hours from his commitment, which is the timeframe for an involuntary commitment pursuant to Section 302." *See* Trial Court Opinion and Order, 1/30/17, at 4-5.[10]

_____

[10] The trial court also declared that PSP "produced the putative 303 Petition less than [24] hours before the October [11], 2016 hearing after having acknowledged that PSP was told that no Section 303 Petition existed." Trial Court Opinion and Order, 1/30/17, at 4-5. However, this finding is irrelevant to the question of whether M.B. was made subject to extended emergency involuntary treatment under Section 303 and whether a Section 303 Certification was filed against M.B. Indeed, the fact that PSP produced the Section 303 Certification "less than [24] hours before the October [11], 2016 hearing after having acknowledged that PSP was told that no Section
*(Footnote Continued Next Page)*

In view of the judgment, wisdom, and skill required in the exercise of judicial discretion, it was manifestly unreasonable for the trial court to conclude that the weight of the evidence supported its factual finding that the Section 303 Certification pertained to some other individual – and not M.B. Certainly: on two of the four pages of the Section 303 Certification, M.B. is identified as the patient; on the other two pages of the Section 303 Certification, a slightly different spelling appears where, in M.B.'s six-letter last name, the second and third letters of his last name are altered from "A-U" to "O-W;" the Section 303 Certification contains the proper date of admission (9/24/03), time of admission (12:50 a.m.), and facility (Millcreek); the Section 303 Certification contains M.B.'s proper age at the time of admission (20 years old); and, the symptoms and behavior that the physician noted in the Section 303 Certification were the same symptoms and behavior that were noted in the Section 302 Certification and that M.B. admitted to during the October 11, 2016 hearing. Specifically, during the October 11, 2016 hearing, M.B. admitted that, at the time of his commitment, he suffered from depression; further, the Section 302 Certification declares that M.B. was involuntarily committed because he took pills and alcohol, cut himself, and left a bloody suicide note. *See* N.T.

_(Footnote Continued)_ ─────────────

303 Petition existed" is only relevant to the admissibility of the Section 303 Certification – and the trial court specifically admitted the Section 303 Certification into evidence at the hearing. N.T. Hearing, 10/11/16, at 11.

Hearing, 10/11/16, at 18; Section 302 Certification, 9/24/03, at 3 and 7. Similarly, the Section 303 Certification declares:

> The pt. has been admitted due to his admitting to suicidal plans, cutting himself for a while, depression and alcohol abuse, does not want to stay, he would be a danger for himself if released before mental stabilization. Expected to be returned on the unit. . . .
>
> . . .
>
> Ad: 9/24/03; suicidal; written note w/his blood - cutting himself; DX – mood disorder n.o.s.; depressed & angry mood; reclusive; morbid depression; [(illegible)] risk of suicide if discharged.

Section 303 Certification, 9/25/03, at 2-3.

Finally, the trial court noted that "M.B. was released within [120] hours from his commitment, which is the timeframe for an involuntary commitment pursuant to Section 302." Trial Court Opinion and Order, 1/30/17, at 4-5. However, this finding is of limited import to the question of whether M.B. was made subject to extended emergency involuntary treatment under Section 303 and whether a Section 303 Certification was filed against M.B. Certainly, even though the Section 303 Certification authorized extended involuntary emergency treatment for an additional 20 days, 50 P.S. § 7303(h) demands that a person be discharged "[w]henever [he] is no longer severely mentally disabled or in need of immediate treatment and, in any event, within 20 days after the filing of the certification." 50 P.S. § 7303(h). Therefore, even if the Section 303 Certification permits extended involuntary emergency treatment for 20 days,

the facility is required to discharge the patient prior to that date if the facility determines that "[he] is no longer severely mentally disabled or in need of immediate treatment." ***Id.***

Respectfully, the trial court abused its discretion when it concluded that its factual finding – that the Section 303 Certification did not pertain to M.B. – was not against the weight of the evidence. ***See In re J.B.***, 106 A.3d 76 (Pa. 2014) ("[i]n reviewing a trial court's adjudication of a weight of the evidence claim, an appellate court determines whether the trial court abused its discretion based upon review of the record; its role is not to consider the underlying question in the first instance") (quotations and citations omitted); ***Commonwealth, Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.***, 956 A.2d 967, 973 (Pa. 2008) ("[r]elief [on a weight of the evidence claim] is available in an appellate court only if it can be said that the trial court acted capriciously or palpably abused its discretion"). Thus, we vacate this portion of the trial court's order and remand for proceedings consistent with this opinion. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000); ***Anzelone v. Jesperson***, 258 A.2d 510 (Pa. 1969).

PSP next argues that, "since the Section 303 [Certification] in this case was pertaining to M.B., the [trial c]ourt did not have jurisdiction to rule that 'the alleged Section 303 [Certification in] this case was entirely invalid' for any reason." ***See*** PSP's Brief at 8-12. Again, we note that the trial court did not order the record of M.B.'s involuntary commitment under Section 303 expunged and M.B. has not appealed this portion of the order.

- 29 -

Nevertheless, to the extent the trial court rendered a legal conclusion and declared, in an Opinion and Order, that the Section 303 Certification was "entirely invalid" and then used this reasoning to expunge M.B.'s involuntary commitment under Section 302, we agree that the trial court erred.

Expunction of involuntary commitment records is governed by 18 Pa.C.S.A. § 6111.1(g).[11] In relevant part, this section declares:

> (2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60-day period set forth under section 6105(a)(2).
>
> (3) The Pennsylvania State Police shall expunge all records of an involuntary commitment of an individual who is discharged from a mental health facility based upon the initial review by the physician occurring within two hours of arrival under section 302(b) of the Mental Health Procedures Act and the physician's determination that no severe mental disability existed pursuant to section 302(b) of the Mental Health Procedures Act. The physician shall provide signed confirmation of the determination of the lack of severe mental disability following the initial examination

---

[11] In **Leach v. Commonwealth**, 141 A.3d 426 (Pa. 2016), the Pennsylvania Supreme Court held that Act 192 of 2014 was unconstitutional because the Act violated the single-subject rule of Article III, Section 3 of the Pennsylvania Constitution. We note that Act 192 of 2014 partially amended 18 Pa.C.S.A. § 6111.1; however, since the Act is unconstitutional, we have not included the amendatory language in our quotation of Section 6111.1.

under section 302(b) of the Mental Health Procedures Act to the Pennsylvania State Police.

18 Pa.C.S.A. § 6111.1(g)(2) and (3).

A review of Section 6111.1(g) reveals that the section only authorizes the expunction of an involuntary commitment record where the involuntary commitment was obtained pursuant to Section 302. Indeed, this Court has expressly held:

> 18 Pa.C.S.A. § 6111.1(g) provides no opportunity to obtain expunction of mental health records pursuant to a commitment under § 7303. . . . [A trial] court ha[s] no jurisdiction under 18 Pa.C.S.A. § 6111.1(g) to review [a petitioner's] commitment under § 7303. [Section 6111.1(g)] only imbues the lower court with jurisdiction to review commitments under § 7302.

*In re Jacobs*, 15 A.3d 509, 511 (Pa. Super. 2011); *see also In re Keyes*, 83 A.3d 1016, 1024 (Pa. Super. 2013) ("we are aware of no authority, statutory or decisional, that provides for the expunction of a mental health commitment record where the commitment was obtained pursuant to 50 P.S. § 7303"); *In re J.M.Y.*, 218 A.3d at 416 ("[Section 6111.1(g)], by its terms, empowers a court to entertain a petition testing the sufficiency of the evidence for a Section 302 commitment; however, it does not authorize a court to consider whether a certification for involuntary mental health treatment pursuant to Section 303 was validly entered").

Thus, Section 6111.1(g) did not provide the trial court with a jurisdictional avenue to invalidate M.B.'s Section 303 Certification.

We further observe that 50 P.S. § 7303(g) sets the statutory procedure for appealing a Section 303 certification where, like here, the certification was made by a mental health review officer. 50 P.S. § 7303(g) provides:

> **(g) Petition to Common Pleas Court.**--In all cases in which the hearing was conducted by a mental health review officer, a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition. Otherwise, the person shall be discharged.

50 P.S. § 7303(g).

Moreover, as our Supreme Court has explained, "[i]n proceedings under the [Mental Health Procedures Act], the case is [] heard by the [mental health review officer], a law-trained, quasi-judicial officer who prepares a certification of findings as to the reasons that extended involuntary treatment is necessary. . . . The certification of a [mental health review officer] is [] a 'final adjudication or determination of a local agency or a Commonwealth agency as to which jurisdiction is vested in the courts of common pleas.'" *In re K.L.S.*, 934 A.2d 1244, 1247-1248 (Pa. 2007), *quoting* Pa.R.C.P. 227.1(g) (internal footnote and some internal quotations and citations omitted). Therefore, the mental health review officer's Section

303 Certification constitutes a "final adjudication or determination" and, under 42 Pa.C.S.A. § 5571(b), the time for appealing such determination to the court of common pleas is statutorily fixed at 30 days. 42 Pa.C.S.A. § 5571(b) ("[e]xcept as otherwise provided . . . , an appeal from a tribunal or other government unit to a court . . . must be commenced within 30 days after the entry of the order from which the appeal is taken, in the case of an interlocutory or final order"); *Appeal of Chartiers Valley Sch. Dist.*, 462 A.2d 673 (Pa. 1983) (holding that "the [30] day period set forth in [42 Pa.C.S.A. § 5571(b)] defines the appeal period of all statutory appeals").

Indeed, in *In re J.M.Y.*, the Pennsylvania Supreme Court expressly held:

> the certification of the mental health review officer, as a quasi-judicial officer, constitutes a "final adjudication or determination" of a local agency or a Commonwealth agency. Consequently, inasmuch as a mental health review officer is considered a local agency or Commonwealth agency, the mental health review officer must be classified as a government unit . . . and, under Section 5571(b) of the Judicial Code, "an appeal from a tribunal or other government unit to a court . . . must be commenced within 30 days after the entry of the order from which the appeal is taken," 42 Pa.C.S. § 5571(b). [An individual], therefore, ha[s] 30 days from the date of the mental health review officer's Certification to petition the court of common pleas for review of any due process or other challenges to the [Section 303] Certification. . . . [N]either the court of common pleas nor the Superior Court ha[s] jurisdiction to consider the merits of [] claims [raised in an untimely petition].

*In re J.M.Y.*, 218 A.3d at 418 (some citations omitted).

In the case at bar, the Section 303 Certification declares that a hearing occurred on September 25, 2003 and that, at the conclusion of the hearing, the mental health review officer concluded that M.B. "is severely mentally disabled and in need of" inpatient treatment, at Millcreek, "as a severely mentally disabled person pursuant to the provisions of Section 303 of the Mental Health Procedures Act of 1976 for a period of 20 days." Section 303 Certification, 9/25/03, at 4. The Section 303 Certification was then entered on the docket, in the Court of Common Pleas of Erie County, on September 25, 2003. *See id.*

If M.B. wished to obtain judicial review of his involuntary commitment pursuant to Section 303, M.B. was required to "petition the court of common pleas for review of the certification" – and to do so within 30 days of the date the certification was filed. 50 P.S. § 7303(g); *In re J.M.Y.*, 218 A.3d at 418. M.B. did not file a petition for review of his Section 303 involuntary commitment. Further, since a "[trial] court ha[s] no jurisdiction under 18 Pa.C.S.A. § 6111.1(g) to review [a petitioner's] commitment under § 7303," the trial court in this case did not have the power to review M.B.'s commitment under Section 303 and declare that the commitment was "entirely invalid." *See* Trial Court Opinion and Order, 1/30/17, at 4-5. The trial court thus erred in doing so.[12]

_____

[12] Within M.B.'s brief to this Court, M.B. claims that, since the trial court concluded that his Section 303 Certification was "entirely invalid," he may

*(Footnote Continued Next Page)*

In its final claim on appeal, PSP argues that the trial court erred when it expunged the record of M.B.'s involuntary commitment under Section 302, as the trial court "appl[ied] the incorrect standard of review." PSP's Brief at 4. We agree. Thus, we vacate this portion of the trial court's order.[13]

_(Footnote Continued)_ ————————————

obtain the expunction of this record. **See** M.B.'s Brief at 12-15. In support of this argument, M.B. cites to our Supreme Court's opinion in **Wolfe v. Beal**, where the Supreme Court held: "a person who has been unlawfully committed to a state mental hospital has a right to the destruction of the hospital records which were created as a result of the illegal commitment." **Wolfe v. Beal**, 384 A.2d 1187, 1189 (Pa. 1978). However, **Wolfe** was decided under the Mental Health and Mental Retardation Act of 1966 – not the Mental Health Procedures Act of 1976. Moreover, and importantly, **Wolfe** merely described an appropriate remedy where an individual succeeds in a procedurally proper challenge to an involuntary mental health commitment; the decision did not create an independent action to challenge an involuntary commitment and **Wolfe** did not purport to confer jurisdiction upon a court to review a Section 303 Certification in the absence of (and, indeed, in contravention of) statutory authority. **See also In re Ryan**, 784 A.2d 803 (Pa. Super. 2001) (holding that, **where the petitioner followed the procedural steps that were necessary to obtain judicial review of his involuntary commitment** under Section 303, both the trial court and this Court were permitted to review the Section 303 Certification).

[13] In our March 20, 2018 unpublished memorandum and order in this matter, we held that, when the trial court expunged the record of M.B.'s involuntary commitment under Section 302, the trial court erred because it "appl[ied] the incorrect standard of review." **In re M.B.**, 188 A.3d 540 (Pa. Super. 2018) (unpublished memorandum) at 29. We thus vacated this portion of the trial court's order. **Id.** The Pennsylvania Supreme Court's December 3, 2019 vacation and remand order did not encompass our holding with respect to the Section 302 issue. **See In re M.B.**, ___ A.3d ___, 2019 WL 6485125, at 1 (Pa. 2019). Nevertheless, in the interest of clarity, we restate this portion of our earlier memorandum.

As noted, Section 6111.1(g)(2) allows an individual who was involuntarily committed under Section 302 to petition the trial court "to review the sufficiency of the evidence upon which the commitment was based." 18 Pa.C.S.A. § 6111.1(g)(2). Upon review, if the trial court "determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged." **Id.**

The trial court's final order in this case was entered on January 30, 2017. On January 19, 2017 – which was prior to the entry of the trial court's final order – the Pennsylvania Supreme Court decided **In re Vencil**, 152 A.3d 235 (Pa. 2017). The Supreme Court held:

> the plain language of section 6111.1(g)(2) requires a court of common pleas to review [] the sufficiency of the evidence to support the 302 commitment, limited to the information available to the physician at the time he or she made the decision to commit the individual, viewed in the light most favorable to the physician as the original decision-maker to determine whether his or her findings are supported by a preponderance of the evidence.

**Id.** at 237.

We note that, prior to **Vencil**, this Court held that PSP was required to prove the sufficiency of the evidence supporting the involuntary commitment by "clear and convincing evidence." **See In re Vencil**, 120 A.3d 1028, 1036-1038 (Pa. Super. 2015), *vacated by* **In re Vencil**, 152 A.3d 235 (Pa. 2017) (Superior Court explaining that Section 6111.1(g)(2) requires a *de novo* hearing, where clear and convincing evidence must be presented to

support the commitment). The Supreme Court's decision in *Vencil* thus lowered the required standard of proof to support Section 302 commitments from the "clear and convincing evidence" standard to the "preponderance of the evidence" standard.[14]

In the case at bar, the trial court's January 30, 2017 order expunged the record of M.B.'s Section 302 commitment. In its accompanying opinion, the trial court explained that PSP "bore the burden of establishing *via* clear and convincing evidence that M.B.'s commitment was sufficient and complied with the Mental Health Procedures Act." Trial Court Opinion and Order, 1/30/17, at 2. As explained above, this statement of the law is incorrect and indicates that the trial court erroneously held PSP to a higher standard of proof than the law mandates. We are thus required to vacate the portion of the trial court's order that expunged the record of M.B.'s

---

[14] Since the Pennsylvania Supreme Court decided *Vencil* while the current case was pending before the trial court, the trial court was required to apply *Vencil* to the case at bar.

Section 302 commitment.[15, 16]

PSP's Motion to Append Rule 1925(b) Statement granted.

_____

[15] An involuntary commitment of M.B. pursuant to Section 303 would prohibit the trial court from expunging the record of M.B.'s Section 302 commitment. **See In re Jacobs**, 15 A.3d at 511 (the appellant was involuntarily committed under Sections 302 and 303 and requested that the trial court expunge the record of his involuntary commitments; this Court held that the trial court did not have jurisdiction to review the Section 303 commitment and that, with respect to his Section 302 commitment, the appellant's claim was "moot because even if he is entitled to expunction under § 7302, expunction cannot go forward because appellant was also involuntarily committed under § 7303").

[16] Within M.B.'s brief to this Court, M.B. claims that the records of his involuntary commitments under Sections 302 and 303 must be expunged because Section 302 is facially unconstitutional and Section 303 is unconstitutional as applied to him. Specifically, M.B. contends that Section 302 facially violates the 14th Amendment to the United States Constitution's due process clause, as it allows "an involuntary commitment . . . in the absence of all tenants of due process." M.B.'s Brief at 21. Likewise, M.B. claims that "Section 303 is facially unconstitutional, as applied in this matter, since [M.B.] was never provided a hearing or counsel and any Section 303 commitment was not perfected in compliance with the [Mental Health Procedures Act] or its implementing regulations." **Id.** at 23. M.B.'s first claim (that Section 302 is facially unconstitutional under the due process clause) fails, as this Court has already held that Section 302 is "constitutionally sound in light of the therapeutic/non-punitive intent and short duration of the Section 302 procedures." **In re F.C., III**, 966 A.2d 1131, 1136-1137 (Pa. Super. 2009), *affirmed*, 2 A.3d 1201 (Pa. 2010). M.B.'s second claim (that Section 303 is unconstitutional as applied to him) is waived, as M.B. was the petitioner in this case and he never raised the claim in his original petition filed before the trial court. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Order vacated in part.[17]  Case remanded for proceedings consistent with this opinion.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2020

---

[17] We note that PSP does not claim that the trial court erred when it granted M.B. state relief from his firearms disability, pursuant to 18 Pa.C.S.A. § 6105(f).  PSP's Brief at 4; **see also** PSP's Brief at 12 n.4.