J-S24024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMIEL DOWDY | |
| Appellant | No. 673 EDA 2019 |

Appeal from the Judgment of Sentence entered September 6, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0002031-2014

BEFORE:  BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED AUGUST 11, 2020**

Appellant, Jamiel Dowdy, appeals from the judgment of sentence imposed on September 6, 2018 following his convictions of sexual assault, terroristic threats, and indecent assault.[1]  Appellant argues the trial court erred by admitting prior acts evidence and contends the verdict was against the weight of the evidence.  Upon review, we affirm.

The trial court provided the following factual background:

On January 1, 2014 around 2:00 A.M. Complainant and her boyfriend left a New Year's Eve party after they had a verbal altercation.  Their argument escalated into physical violence upon their return home, and ultimately, Complainant was kicked out into the street with no shoes or coat.  The Complainant went around the corner from her house, sat on a ramp, and was crying

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3124.1, 2706, and 3126, respectively.

when she encountered Appellant who pulled up in a white van, parked and inquired why she was upset. Appellant's offer to take the Complainant to the nearest police station was accepted and she got into his vehicle. Instead, Appellant drove around the neighborhood before parking at his residence.

At his residence Appellant said he needed to go inside to get a phone charger. The Complainant did not want to go inside, however, Appellant dragged her out of the car by her hair into the residence, and up the stairs to a second floor bedroom where he sexually assaulted her. Throughout the assault, the Appellant kept control over the Complainant by holding her hair, forcibly engaging her in oral and vaginal intercourse. The Complainant begged the Appellant to use a condom to which he complied. He did not ejaculate. When Appellant attempted anal intercourse, the Complainant screamed and he stopped. The sexual assault was accompanied by Appellant's threats such as "You better do it or else I'll fuck you up, bitch. I will kill you." When the Appellant finished he apologized, 'chuckled' and stated, "I'm sorry, I basically just raped you." When Complainant first asked to leave, Appellant responded, "Don't make me turn into a asshole again." Eventually, the Complainant was returned to her neighborhood, went to the home of her boyfriend's cousin who lived across the street, and reported the incident. The Complainant was taken to the police Special Victims Unit, gave a statement to detectives, and was given a sexual assault examination.

Trial Court Opinion, 7/18/19, at 2-3 (footnote and references to notes of testimony omitted).

At the conclusion of Appellant's bench trial, the trial judge announced her verdict, finding Appellant guilty of sexual assault (a felony of the second degree), terroristic threats, and indecent assault (both misdemeanors), but not guilty of the remaining charges, which included first-degree felony charges of kidnapping, rape, and intentional deviate sexual intercourse, as well as other misdemeanor offenses. On September 6, 2018, the trial court sentenced Appellant to a term of five to ten years in prison for sexual assault

along with concurrent sentences of two to four years in prison for terroristic threats and two years' probation for indecent assault. Appellant filed a post-sentence motion, which the trial court denied on January 31, 2019. This appeal followed.[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider two issues in this appeal:

I.      Did not the lower court err in admitting prior acts evidence against [Appellant] where it was only relevant to show [Appellant] acted in conformity with the prior act?

II.     Were the verdicts so contrary to the weight of the evidence as to shock one's sense of justice and be based on pure conjecture?

Appellant's Brief at 2.

Appellant's first issue stems from the trial court's September 7, 2016 ruling following a hearing on the Commonwealth's motion to permit other acts evidence. The "other act" at issue was a rape that occurred under circumstances similar to those involved in the instant case, leading to Appellant's conviction for that crime.

---

[2] To be timely, Appellant's appeal had to be filed by Monday, March 4, 2019. Because the trial court docket reflects a March 5, 2019 filing date, we issued a rule to show cause why the appeal should not be dismissed as untimely. Appellant filed a response, contending the appeal was timely filed on March 4, and attached as proof a time-stamped copy of the notice reflecting filing on March 4, 2019 at 4:23 p.m. We issued an order that discharged the rule and referred the matter to this merits panel. In light of the March 4, 2019 time stamp, we conclude the appeal was timely filed.

When considering a challenge to an evidentiary ruling of the trial court, "our standard of review is limited. A trial court's decision will not be reversed absent a clear abuse of discretion." ***Commonwealth v. Conte***, 198 A.3d 1169, 1180 (Pa. Super. 2018) (quoting ***Commonwealth v. Aikens***, 990 A.2d 1181, 1184 (Pa. Super. 2010) (citations omitted)).

As our Supreme Court has explained:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009) (citations omitted).

At trial, the prosecutor read the following stipulation into the record:

> Your Honor, there is a stipulation that [Appellant] has a prior conviction for similar acts. On December 12, 1996, [Appellant] saw the victim [R.P.P.][3] at a club around 2:30 in the morning. She asked him if he could give her a ride home and he agreed. [R.P.P.] got into the car with [Appellant and another person].
>
> But instead of driving her home, [Appellant] drove[] her to his house at 1737 Newkirk Street. He told [R.P.P.] he needed to get permission from his cousin to use the car to go to New Jersey so they all went into the house.

---

[3] Although the victim was identified by name in the stipulation, we see no reason to name her here, just as the trial court did not identify the Complainant by name in its opinion.

Once inside, he told her that he wanted to have sex with her and she said no. [Appellant] pulled out a gun and threatened her. He then forced [R.P.P.] to perform oral sex on him and when he made his intentions clear that he was going to vaginally rape her, she begged him to use a condom, which he did.

Afterwards . . . they walked together for a few blocks before [R.P.P] began screaming and [Appellant] ran. Police arrested [Appellant] and after trial, he was convicted of rape, involuntary deviate sexual intercourse, and related offenses[.]

Trial Court Opinion, 7/18/19, at 5 (quoting Notes of Testimony, Trial, 6/13/18, at 128-29).

As the trial court explained:

There were shared similarities between the two cases, such as: both victims were young African American females who encountered Appellant in the early morning hours; the crimes were committed in close proximity to each other; the Appellant gave a ride to both victims; both victims were driven to Appellant's residence instead of their intended destinations; both victims were forced to perform oral sex on Appellant; both victims begged Appellant to use a condom to which he complied; both victims were vaginally raped; and both victims were threatened.

*Id.* at 5 (citing Notes of Testimony, Hearing, 9/7/16, at 5-6).

The trial court concluded that "[t]he striking similarities established a common scheme, plan or design and an absence of mistake or accident." *Id.* Similarly, in finding evidence of prior crimes admissible, our Supreme Court in *Commonwealth v. Hicks*, 156 A.3d 1114 (Pa. 2017), stated:

These similarities not only establish the required logical connection between the prior assaults and the circumstances surrounding the victim's death, they also present a "virtual signature" for purposes of proving common scheme, intent and identity. They are not mere insignificant details of crimes of the

same class, where there is nothing distinctive to separate them from, for example, common street crimes.

*Id.* at 1128 (citing, *inter alia*, **Commonwealth v. Weakley**, 972 A.2d 1182, 1189 (Pa. Super. 2009) (sufficient commonality of factors between crimes dispels notion they are merely coincidental and permits conclusion they are so logically connected as to share a perpetrator)).

Again, as our Supreme Court recognized in **Sherwood**, Pa.R.Crim.P. 404(b)(2) provides that evidence of other crimes may be admissible to show, *inter alia*, opportunity, intent, preparation or plan, if the probative value outweighs the potential for unfair prejudice. **Sherwood**, 982 A.2d at 487. Here, the similarities between Appellant's earlier crime and the circumstances of the present case likewise establish a logical connection between the assaults and present a "virtual signature" for "proving common scheme, intent and identity," permitting a "conclusion they are so logically connected as to share a perpetrator." **See Hicks**, 156 A3d at 1128. The trial court weighed the probative value against the prejudicial impact and concluded, "On balance, the evidence was relevant, outweighed any prejudice, and was properly admitted." Trial Court Opinion, 7/18/19, at 5.

Based on our review of the evidence and relevant authorities, we find no abuse of discretion in the trial court's determination that evidence of Appellant's previous crime demonstrated a common scheme and that the

probative value of that evidence outweighed the potential for unfair prejudice.

Appellant is not entitled to relief on his first issue.[4]

In his second issue, Appellant contends the verdicts were against the

weight of the evidence. Our Supreme Court has instructed:

> In reviewing a trial court's adjudication of a weight of the evidence claim, "an appellate court determines whether the trial court abused its discretion based upon review of the record; its role is not to consider the underlying question in the first instance." **Commonwealth v. Blakeney**, 596 Pa. 510, 946 A.2d 645, 653 (2008). Thus, a weight of the evidence claim must be presented to the trial court so that it may address it in the first instance. **Commonwealth v. Widmer**, 547 Pa. 137, 689 A.2d 211, 212 (1997). **See also Commonwealth v. Karkaria**, 533 Pa. 412, 625 A.2d 1167, 1170 n. 3 (1993) ("An allegation that the verdict is against the 'weight' of the evidence is a matter to be resolved by the trial court.").
>
> Once a weight of the evidence claim has been presented to the trial court, it then reviews the evidence adduced at trial and determines whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." [**Commonwealth v. Clay**, 619 Pa. 423, 64 A.3d 1049, 1055 (2013)]. A trial court should award a new trial if the verdict of the fact finder "is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Id.** Stated another way, "[a] weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." **Commonwealth v. Lyons**, 622 Pa. 91, 79 A.3d 1053, 1067 (2013).

---

[4] The trial court also determined that the prior acts evidence issue was waived in light of Appellant's acceptance of the stipulation and failure to object to it. However, the stipulation was agreed to between the parties based on the trial court's September 7, 2016 pre-trial ruling allowing the evidence. We do not find the issue waived.

***In re J.B.***, 106 A.3d 76, 95 (Pa. 2014). Relief on a weight of the evidence claim is available in an appellate court only if it can be said that the trial court acted capriciously or palpably abused its discretion. ***In re M.B.***, 228 A.3d 555, 573 (Pa. Super. 2020) (citing ***Commonwealth, Dept of Gen. Servs. v. U.S. Mineral Prods. Co.***, 956 A.2d 967, 973 (Pa. 2008)).

Here, the trial court considered the evidence presented at trial and concluded:

> The evidence presented by the Commonwealth was more than sufficient to prove the Appellant guilty of the crimes charged. Complainant's testimony was credible and corroborated with other evidence, such as the video evidence which corroborated her account of the initial encounter with Appellant in the white van. While the Commonwealth's case was devoid of incriminating physical evidence, as the DNA results did not implicate the Appellant who was wearing a condom and did not ejaculate, the Complainant's testimony was detailed and believable beyond a reasonable doubt.
>
> The Complainant's credible account set forth the reasons why she was out in the cold during the early morning hours of January 1, 2014, barefoot and dressed only in a sweater and pants. Appellant's sexual assault was vividly explained, step by step, from being forced out of the van, up the stairs into a bedroom where the Complainant was positioned for oral, vaginal, and unconsummated anal sex. The Complainant described: the fear she felt because of Appellant's threats; how she threw up as Appellant forced her with threats to keep performing oral sex; how she screamed when Appellant tried to penetrate her anally; and, how ultimately she complied with Appellant's demands so she "can make this out alive, out of this situation alive." The Complainant's ordeal was punctuated at its conclusion when Appellant with a 'chuckle' admitted to her "I felt like I just raped you."
>
> At trial, Appellant presented evidence that was unconvincing and/or of little evidentiary value. The testimony of Appellant's friends, Adams and Wagstaff, to the effect that they had seen the

Complainant in Appellant's van prior to January, 2014 lacked credibility. Also of minimal value was the testimony of Appellant's mother regarding her two sisters, who lived with Appellant at the family home at the time of the incident, one of which, Trudy Tolliferreo required a loud oxygen machine every day. Tolliferreo, who was elderly and infirm, by way of stipulation, testified that she didn't hear anything or see the Complainant when the incident reportedly occurred.

In addition to the Complainant's credibility which was not undercut by the defense presentation, there was Appellant's attempt to elude police by hiding in a crawl space under his basement steps. Such attempts at concealment portrays [sic] his consciousness of guilt. The court's verdict is not contrary to, nor is it against, the weight of the evidence and [shocks no one's conscience]. No relief is warranted.

Trial Court Opinion, 7/18/19, at 3-4 (references to notes of testimony and some capitalization omitted).

Based on our review of the record, we do not discern any abuse of discretion on the part of the trial court in rejecting Appellant's weight of the evidence claim. Therefore, we shall not disturb it.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2020