J-S35003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A. CHARLES PERUTO, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CATALYST OUTDOOR ADVERTISING, | : | |
| LLC., AND THADDEUS BARTKOWSKI | : | |
| III | : | No. 2913 EDA 2019 |
| | : | |
| | : | |
| APPEAL OF: CATALYST OUTDOOR | : | |
| ADVERTISING, LLC. | : | |

Appeal from the Judgment Entered August 28, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170901962

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                     Filed: January 13, 2021

Catalyst Outdoor Advertising, LLC ("Catalyst") appeals from the judgment in favor of A. Charles Peruto, Jr.[1]  After review, we affirm.

We summarize the factual history as recited by the trial court.  The controversy between Catalyst and Mr. Peruto arises from an earlier dispute between Mr. Peruto and Santander Bank.  Mr. Peruto is a practicing attorney who filed a lawsuit in federal court against Santander Bank and Meridian

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Catalyst purports to appeal from the denial of post-trial motions.  The appeal properly lies from the judgment.  ***Thom v. CDM Auto Sales***, 221 A.3d 681, 683 (Pa.Super. 2019).  We have amended the caption accordingly.

Capital Group, LLC, over a $267,000 prepayment penalty on a loan from Santander. ***See A. Charles Peruto, Jr. v. Santander Bank, N.A. and Meridian Capital Group, LLC***, Case 2:16-cv-04092-GEKP (E.D. Pa.). Mr. Peruto's complaint against Santander was dismissed with prejudice on October 24, 2016. Following that dismissal, Mr. Peruto embarked on a campaign to raise public awareness of his grievances with Santander. ***See*** N.T. Bench Trial, 6/20/19, at 55. To that end, he organized public demonstrations outside of several Santander Bank branches with thirty-five or more people in attendance. ***Id***.

In addition to the foregoing, Mr. Peruto decided to take out a billboard advertisement vilifying Santander, something to the effect of "Santander: The Bank that Robs You." ***Id***. at 28. Mr. Peruto knew that many mainstream advertising companies would be unwilling to run what he candidly admitted was an outrageous advertisement. ***Id***. at 8-9, 28. He charged his son, A. Charles Peruto, III (hereinafter "Chaz Peruto") with the task of finding a company that would perform the service. ***Id***. at 7. Chaz Peruto was directed to Catalyst, an advertising company that operates billboards in the Philadelphia area. He and Thaddeus Bartkowski, CEO of Catalyst, discussed a four-week advertising contract at the price of $25,000. Mr. Peruto testified at trial that he had previously placed billboard advertisements and that they typically only cost $2,000 to $6,000. ***Id***. at 29.

On October 18, 2016, Chaz sent an email to his father in which he reported that Catalyst agreed to run the advertisement, but with several caveats. *Id*. at 9. Catalyst wanted to use a digital billboard as it was easier to remove than a physical one, and it would likely be removed in a few days. Additionally, Catalyst would have the final say over the content of the copy. *Id*. According to Chaz, his father was willing to pay the $25,000 upfront because Catalyst was willing to charge them only for the days the advertisement was actually displayed. *Id*. at 10. According to Mr. Peruto, despite the $25,000 price, he knew he "was only going to spend another two or 3,000 [dollars] to get [Santander] to the table to negotiate with me. I wasn't going to spend another [$]25,000." *Id*. at 31.

Thereafter, Catalyst e-mailed a contract to Chaz Peruto consisting of thirteen paragraphs that did not include a term about paying on a *per diem* basis if the advertisement was removed prior to a month, although the parties had discussed such a provision. *Id*. at 11. After Chaz Peruto expressed concern over the omission, Catalyst sent a revised contract on October 31, 2016, which added the following fourteenth paragraph:

> [Catalyst] has the right to approve advertising copy. In the event [Catalyst] needs to remove advertising copy, [Mr. Peruto] will only be billed for the days that [his] advertisements appeared on the units.

*Id*. at 12-13; *see also* Def. Motion, 8/5/19, Ex. A. According to Chaz, this paragraph added by Catalyst functionally memorialized in writing his understanding of the agreement, and specifically, his father's understanding

that he would pay for the advertisement at a *per diem* rate. ***See*** N.T. Bench Trial, 6/20/19, at 14.

On November 1, 2016, Chaz signed the credit card form authorizing Catalyst to charge Mr. Peruto $25,000 for the advertisement. Catalyst sent Mr. Peruto several proposed designs, and he agreed to a format that included a design and the phrase "Santander: The Bank that Robs You." ***Id***. at 29. Mr. Peruto did not realize at the time that design used in the advertisement was the Santander logo or that it was trademark protected. ***Id***. The agreed-upon advertisement was displayed on Catalyst's electronic billboard beginning on Friday, November 4, 2016. ***Id***. at 24.

On November 5, 2016, Mr. Peruto was contacted by an attorney for Santander Bank. ***Id***. at 30. The attorney informed Mr. Peruto that the design on the billboard was Santander's logo. Mr. Peruto accepted service of a complaint in New Jersey and appeared in federal court on Monday, November November 7, 2016, where he was informed that his improper use of Santander's logo subjected him to a fine of $250,000 per day, and that the fine already totaled $750,000 for the three days the advertisement had appeared. ***Id***. Immediately thereafter, Mr. Peruto called his son and directed him to immediately arrange for the removal of the advertisement. ***Id***.

Chaz informed Mr. Bartkowski of Catalyst that his father had been named in a lawsuit that day, and that the advertisement had to be removed. ***Id***. at 15. Catalyst agreed to do so at once. ***Id***. at 24. Chaz Peruto received

confirmation from Catalyst on Wednesday that the advertisement had been removed. *Id*. at 24, 30.

Although Mr. Peruto expected to be charged only for the three days that the advertisement actually ran, he subsequently received a credit card bill that did not reflect any credit or refund for the unused portion of the $25,000 he originally paid. *Id*. at 30-31. Chaz testified that when Mr. Bartkowski eventually responded to his inquiries, Mr. Bartkowski stated that since Catalyst was not forced to take down the billboard, Mr. Peruto would be charged the full $25,000. *Id*. at 16. That was not consistent with Chaz's understanding of the agreement. *Id*. At trial, Mr. Peruto testified that he and Mr. Bartkowski had a "complete understanding" that he was not going to be charged $25,000 as "no way was this billboard saying something that outrageous in such a prevalent spot would be up for a month." *Id*. at 31.

On September 18, 2017, Mr. Peruto filed this action against Catalyst. Mr. Peruto alleged Catalyst breached the contract by charging him the full $25,000 rather than the *pro rata* amount that the parties had agreed to per paragraph fourteen of the contract. The Commerce Court referred the matter to compulsory arbitration. Arbitrators awarded Mr. Peruto $22,321.45, an amount reflecting the refund he should have received since the advertisement had run only for three days.

Catalyst appealed the arbitration ruling to the court of common pleas. Catalyst filed a motion for summary judgment in which it alleged that the

agreement was fully integrated, did not contain a *pro rata* provision, and unambiguously provided for a $25,000 charge for the billboard. The trial court denied summary judgment, concluding that there were genuine issues of material fact on the face of the contract.

A bench trial was held on June 20, 2019. Thereafter, on July 23, 2019, the court entered judgment in favor of Mr. Peruto in the amount of $20,535.75. Catalyst timely filed a motion for post-trial relief pursuant to Pa.R.C.P. 227.1, and requested judgment notwithstanding the verdict or a new trial. The court denied Catalyst's motion, stating that it did not err in its finding in favor of Mr. Peruto and that no sufficient basis existed to warrant the relief Catalyst requested. Order, 8/27/19, at 23. Catalyst timely appealed to this Court and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal.[2]

Catalyst presents seven issues for our review:

1. Whether the trial court erred as a matter of law and/or abused its discretion in determining that the contract at issue was ambiguous?

2. Whether the trial court erred as a matter of law and/or abused its discretion in finding that Catalyst breached the contract and that plaintiff was entitled to a refund of any money?

3. Whether the trial court erred as a matter of law and/or abused its discretion when it determined that Catalyst "needed" to take down the billboard advertisement when the evidence at

---

[2] The trial court did not file a Pa.R.A.P. 1925(a) opinion. The trial court opinion upon which we rely was written in support of its denial of Catalyst's motion for post-trial relief. *See* Memorandum of Law, 8/27/19.

trial demonstrated that Catalyst did not need to remove the advertisement and, to the complete contrary, [Mr. Peruto], out of his own necessity, was the one who directed Catalyst to remove it because Santander Bank threatened to sue and did in fact sue plaintiff (and not Catalyst)?

4.     Whether the trial court erred as a matter of law and/or abused its discretion in awarding [Mr. Peruto] $20,525.75 without any basis in the factual record?

5.     Whether the trial court erred as a matter of law and/or abused its discretion by failing to conclude that [Mr. Peruto] failed to establish the duration that the ad ran?

6.     Whether the trial court erred as a matter of law and/or abused its discretion when it denied Catalyst's motion for Summary Judgment on the grounds that, *inter alia*, [Mr. Peruto] failed to come forward with any evidence and relied solely upon the allegations of the Complaint, which, as a matter of law, cannot defeat a motion for summary judgment?

7.     Whether the trial court's verdict in favor of [Mr. Peruto] was against the clear weight of the evidence, necessitating that the court strike the verdict and grant a new trial?

Catalyst's brief at 7.

When reviewing an appeal from the denial of judgment notwithstanding the verdict ("JNOV"), we must consider the evidence, together with all reasonable inferences drawn therefrom in a light most favorable to the verdict winner. *A.Y. v. Janssen Pharmaceuticals, Inc.*, 224 A.3d 1, 11 (Pa.Super. 2019) (citing *Polett v. Public Communications, Inc.*, 83 A.3d 203, 212 (Pa.Super. 2013) *rev'd on other grounds*, 126 A.3d 895 (Pa. 2015)).  We will reverse a trial court's denial of JNOV only when we find an abuse of discretion or an error of law that controlled the outcome of the case.  *Id*.  JNOV is only proper in a "clear case" where the facts are such that no two reasonable minds

could fail to agree that the verdict was improper. *Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 848 (Pa.Super. 2012).

We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. *See Bowman v. Rand Spear & Associates*, 234 A.3d 848 (Pa.Super. 2020). We review the trial court's alleged error and determine whether the trial court erred, and if so, whether the error resulted in prejudice necessitating a new trial. *Gbur v. Golio*, 932 A.2d 203, 206-07 (Pa.Super. 2007). If the alleged mistake concerned an error of law, we will scrutinize for legal error. *Id*. Our scope and standard of review of the denial of a new trial is commensurate with that applied to the underlying error alleged.

We turn to Catalyst's first issue alleging that the court erred in finding that the contract was ambiguous. When reviewing such a claim, we "are mindful that the interpretation of a contract is a question of law." *Profit Wize Marketing v. Wiest*, 812 A.2d 1270, 1274 (Pa.Super. 2002) (internal citations omitted); *see also Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.*, 916 A.2d 1183, 1188 (Pa.Super. 2007). Therefore, our standard of review is *de novo*, and we are not bound by the trial court's ruling.

The following principles inform our review. A contract shall be interpreted in accordance with the parties' intent. *Lesko v. Frankford Hospital -Bucks County*, 15 A.3d 337, 342 (Pa. 2011). To determine the intent of the parties to a written agreement, a court will look first to what the

parties clearly expressed, "for the law does not assume that the language of the contract was chosen carelessly." ***Murphy v. Duquesne University of the Holy Ghost***, 777 A.2d 218 (Pa. 2001) (citing ***Steuart v. McChesney***, 444 A.2d 659, 661 (Pa. 1982)). When examining a contract containing clear and unambiguous terms, we shall only examine the text of the writing itself to give effect to the intent of the parties. ***Osial v. Cook***, 803 A.2d 209, 213 (Pa.Super. 2002).

Language of a contract is not ambiguous when we can determine its meaning "without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." ***Baney v. Eoute***, 784 A.2d 132, 136 (Pa.Super. 2001). A contract is determined to be ambiguous when it is reasonably susceptible of more than one construction and meaning, or is "obscure in meaning through indefiniteness of expression or has a double meaning." ***See Profit Wize Marketing***, ***supra*** at 1275 (citing ***Baney***, ***supra*** at 136). Where the language of a contract is ambiguous, the provision is to be construed against the drafter – a principle of legal construction otherwise known as *contra proferentum*. ***See Windows v. Erie Insurance Exchange***, 161 A.3d 953, 957 (Pa.Super. 2017). Moreover, upon a finding of ambiguity, a court may permit introduction of extrinsic or parol evidence to determine the intent of the parties by clarifying or explaining the ambiguity. ***Yocca v. Pittsburgh Steelers Sports, Inc.***, 854 A.2d 425, 437 (Pa. 2004).

The trial court "found, as matter of law that an ambiguity existed within the contract." Trial Court Opinion, 8/27/19, at 4-5. In addition to the contradictory terms regarding the duration of the contract, the court concluded that the meaning of the word "needs" in paragraph 14 of the contract was ambiguous. *Id*. at 11. Thus, it considered parol evidence to resolve the ambiguity, construed the ambiguity against the scrivener of the contract, and concluded that Catalyst breached the contract when it refused to refund the unused balance of the $25,000 fee. *Id*. at 5.

Catalyst claims first that the trial court erred in finding the contract ambiguous. It argues that the plain language expressed the intent of the parties that the billboard would cost $25,000, and that Mr. Peruto would be entitled to a refund only "in the event Catalyst needs to remove advertising copy." *See* Catalyst's brief at 15. In Catalyst's view, the decision whether to remove the advertisement was Catalyst's, and only if Catalyst determined that the billboard advertisement needed to be removed would Mr. Peruto be charged the *per diem* rate, and there was no ambiguity. Catalyst contends that since it removed the billboard in order to avoid the imposition of additional fines against Mr. Peruto, and at his request, rather than any "need" on the part of Catalyst, Mr. Peruto was not be entitled to *per diem* billing. *See* Catalyst's brief at 10.

Mr. Peruto points to several inconsistencies on the face of the contract. Paragraph 4 provided "[t]his Contract is non-cancellable on behalf of the

Advertiser (Mr. Peruto). [Mr. Peruto] is bound to a 4 week contract." Def. Motion, 8/5/19, Ex. A. at ¶ 4. On the other hand, the added paragraph 14 states "[Catalyst] has the right to approve advertising copy. In the event [Catalyst] needs to remove advertising copy, [Mr. Peruto] will only be billed for the days that [his] advertisements appeared on the units." *Id*. at ¶14. Chaz Peruto testified that it was his understanding that "we would only be charged per diem or anything like that if they (Catalyst) had to take it down." N.T., 6/20/19, at 11.

We agree with the trial court that "[r]egardless of how emphatically [Catalyst] may assert the 'plain and unambiguous language' should resolve the dispute, this argument remains unavailing because Paragraphs 4 and 14 plainly contradict one another." Trial Court Opinion, 8/27/19, at 11. Furthermore, the words "[i]n the event [Catalyst] needs to remove advertising copy" were ambiguous. Under the test for ambiguity employed by Pennsylvania courts, whether Catalyst "need[ed] to remove the advertising copy" is an ambiguous term because the conditions - if any- that could trigger Catalyst's "need" to remove the advertisement were reasonably susceptible to "different constructions and capable of being understood in more than one sense." *See Ramalingam*, *supra* at 1046. For instance, it is unclear whether the words referenced Catalyst's need to remove the copy for its own purposes, or whether it simply acknowledged that Catalyst would need to remove the

copy as it was something only Catalyst could physically do. Parol evidence was admissible to resolve the ambiguity.

This brings us to Catalyst's second issue: that the trial court erred in finding that Catalyst breached the contract and that Mr. Peruto was entitled to a refund. The trial court, sitting as finder of fact, found that the record evinced a consensus among the parties that the advertisement would not run for an entire month. We concur. It was uncontroverted that the charge for the billboard was higher than the usual price, strongly suggestive that a premium was being paid for its incendiary content. Furthermore, the parties agreed that the advertisement would be electronic, rather than print, to facilitate the ease of its removal. *Id*. at 8-9, 29. The addition of paragraph 14 reflected Mr. Peruto's unwillingness to pay $25,000 for a billboard that was unlikely to be displayed for more than a few days, and his insistence that he pay at a *per diem* rate when it was inevitably removed.

The trial court found, based on the foregoing testimony, that the parties intended that Mr. Peruto pay a *per diem* rate if the billboard was removed prior to four weeks. The addition of Paragraph 14, in the court's view, was intended to satisfy Mr. Peruto's concerns about the need for a *per diem* rate given the expectation that the billboard would be needed to be removed early. *Id*. Hence, the court found that Catalyst's refusal to refund the money constituted a breach of the agreement.

In light of the testimony surrounding the creation of the contract, and construing ambiguities in the contract against its drafter, we find that the trial court's findings are supported by the evidence and that its interpretation gave effect to the agreement of the parties. **See Windows**, **supra** at 957. Therefore, we find that the trial court did not err in finding that Mr. Peruto was entitled to a refund for the unused days of the contract as that finding was amply supported by the evidence. This was not a case where "no two reasonable minds could fail to agree that the verdict was improper." **See Gillingham**, **supra**. Hence, neither JNOV nor a new trial was warranted.

We turn now to the fourth and fifth issues raised by Catalyst, both of which involve the calculation of damages. Catalyst claims first that the trial court's award of $20,525.75 was not supported by the evidence because Mr. Peruto failed to establish the duration of the billboard. **See** Catalyst's brief at 18.

Where, as here, the trial court sits as the finder of fact, appellate courts defer to the trial court in matters of fact and credibility that are supported by the record and free of legal error. **Berg v. Nationwide Mutual Insurance Company, Inc.,** ____A.3d____(Pa. 2020), 2020 WL 5014927 (citing **Rizzo v. Haines**, 555 A.2d 58, 61 (Pa. 1989)). The trial court is free to believe all, part, or none of the evidence, and to assess the credibility of witnesses. **Commonwealth v. Johnson**, 668 A.2d 97, 101 (Pa. 1995). Upon review, we conclude that the record supports the trial court's assessment of damages.

The testimony at trial established that the contract price was $25,000 for one month of advertising, but that Mr. Peruto would be charged *per diem* for the days that the advertisement was actually displayed. N.T. Trial, 6/20/19, at 9. It was undisputed that the advertisement began to run on Friday, November 4, 2016. *Id*. at 24. Mr. Peruto was contacted by a Santander attorney regarding the prohibited use of Santander's logo in the advertisement on Saturday, November 5, 2016. *Id*. at 30. Mr. Peruto appeared in federal court the following Monday, November 7, 2016. *Id*. At that time, the advertisement had run for three days. While he was in federal court, Mr. Peruto learned that the use of Santander's logo subjected him to a fine of $250,000 per day, for a potential $750,000 in fines. *Id*. Due to the urgency of the situation, Mr. Peruto immediately contacted his son that day and directed him to request the advertisement's immediate removal. *Id*. at 24. Catalyst agreed to remove the advertisement immediately. *Id*. Two days later, on November 9, 2016, Mr. Peruto received a confirmation that the advertisement had been removed. *Id*. at 24, 30. Therefore, the evidence revealed that the advertisement ran for three days at a minimum, and perhaps as long as five days.

Sitting as the finder of fact, the trial court determined from the evidence presented at trial that the longest possible duration of time that the advertisement could have run was five days. Chaz Peruto testified that after he directed Catalyst to remove the billboard, Catalyst may have "taken [it]

down either Monday or Tuesday, possibly Wednesday morning[.]" *Id*. at 24. Absent evidence of precisely when the advertisement ceased, the trial court concluded that the advertisement ran at most for five days. It calculated a daily rate of $892.85, or a total cost of $4,464.25 to run the advertisement for the five days, which it then subtracted from the original $25,000 in arriving at its calculation of the $20,535.75 award to Mr. Peruto. *See* Trial Court Opinion, 8/27/19, at 17-19.

The law is well-settled that "damages need not be proven with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences." *J.W.S. Delavau, Inc. v. Eastern America Transp. & Warehousing, Inc.*, 810 A.2d 672, 685-86 (Pa.Super. 2002). Certainly "sufficient facts must be introduced so that the court can arrive at an intelligent estimate without conjecture." *Id*. We find sufficient evidence of damages herein to permit the fact finder to calculate Mr. Peruto's loss without resort to speculation. This claim fails.

Next Catalyst contends that the trial court erred as a matter of law and abused its discretion when it "denied Catalyst's motion for summary judgment on the grounds that [Mr. Peruto] failed to come forward with any evidence and relied solely upon the allegations of the Complaint, which, as a matter of law, cannot defeat a motion for summary judgment." Catalyst's brief at 7.

The question of whether summary judgment was warranted is one of law, and as such our standard of review is *de novo* and our scope of review is

plenary. ***City of Philadelphia v. Cumberland County Bd. of Assessment Appeals***, 81 A.3d 24, 44 (Pa. 2016). Summary judgment is permitted only when the record demonstrates that there are no genuine issues of material fact, and it is apparent that the moving party is entitled to judgment as a matter of law. ***Id***. (citing ***Chepkevich v. Hidden Valley Resort, L.P.***, 2 A.3d 1174, 1181 (Pa. 2010)).

In support of summary judgment below, Catalyst argued that the contract was fully integrated and did not contain a *pro rata* provision. **See** Catalyst's Memorandum of Law in Support of its Motion for Summary Judgment, 9/29/18, at unnumbered 4. Mr. Peruto maintained that the agreement unambiguously provided for a *per a diem* rate in the event that the billboard needed to be removed prematurely. In a supplementary brief, Catalyst argued that it was entitled to summary judgment because Mr. Peruto relied solely on his pleadings and offered no documentary support or affidavits substantiating his claim, the same claim it asserts herein.

Our review of the record at summary judgment confirms that the contract itself, in addition to the pleadings, was part of the record. The trial court denied summary judgment because there were genuine issues of material fact on the face of the contract. It found that the contract had conflicting provisions, and its meaning was not immediately clear just by reading the words of the contract itself. **See** Trial Court Opinion, 8/27/19, at 21. Simply stated, Mr. Peruto provided sufficient evidence on the issue of

whether the contract was ambiguous, namely, the contract itself, to avoid summary judgment. We find no error, and hence, no relief is due on this claim.

Catalyst's final claim is that the trial court's verdict was against the weight of the evidence and that it is entitled to a new trial. *See* Catalyst's brief at 7. The law is well settled that:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*In re M.B.*, 228 A.3d 555, 566 (Pa.Super. 2020) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)).

On appeal, we review "the trial court's exercise of discretion, not . . . the underlying question of whether the verdict is against the weight of the evidence." *Id*. The trial judge has the opportunity to hear and see the evidence presented, and hence, we afford commensurate consideration to its view of the evidence. For this reason, a claim that the verdict was against the weight of the evidence is "one of the least assailable reasons for granting or denying a new trial." *Id*. at 566.

- 17 -

The trial court, sitting as factfinder, heard testimony from Mr. Peruto and Chaz Peruto regarding the facts surrounding the execution of the agreement. Catalyst vigorously cross-examined the Perutos, but offered no evidence disputing their version of the events. Moreover, the trial court expressly credited Chaz's testimony and the email from Catalyst that "made sure to draw attention to the 'revised' agreement and to 'see Note 14'." *Id*.; *see also* N.T. Bench Trial, 6/20/19 at 12. For the trial court, the evidence was indicative of the intent of the parties to be bound to a *per diem* contract. Trial Court Opinion, 8/27/19 at 17. Hearing all of the evidence, the trial court determined that by refusing to adhere to per diem term, Catalyst breached the contract. *Id*. at 20.

In denying Catalyst's motion for post-trial relief, the trial court maintained that "it did not abuse its discretion by entering a finding in [Mr. Peruto's] favor because it did not make a mistake that warrants relief under [Catalyst's] motion for post-trial relief." *Id*. at 6. Based on the foregoing, we have no basis to disturb the trial court's view of the evidence, and hence, no new trial is warranted on that basis.

For these reasons, we affirm the judgment of the trial court in favor of Mr. Peruto in the amount of $20,525.75.

Judgment affirmed. Jurisdiction relinquished.

Judge Colins joins the memorandum.

Judge Stabile files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/21